# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HATTIE MAY WELLS, | NO. EDCV 10-1209 AGR |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Hattie May Wells ("Wells") filed this action on August 12, 2010. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on August 31 and September 14, 2010. (Dkt. Nos. 6, 7.) On April 13, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court remands this matter to the Commissioner for proceedings consistent with this opinion.

///
///
///
///

# I.
# PROCEDURAL BACKGROUND

On May 28, 2008, Wells filed applications for disability insurance benefits and supplemental security income benefits alleging a disability onset date of August 4, 2007. Administrative Record ("AR") 12. The applications were denied initially and upon reconsideration. *Id.* Wells requested a hearing before an Administrative Law Judge ("ALJ"). On July 10, 2009, the ALJ conducted a hearing at which Wells testified. AR 12, 25-40. On November 23, 2009, the ALJ issued a decision denying benefits. AR 9-24. On July 17, 2010, the Appeals Council denied the request for review. AR 1-4. This action followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Wells met the insured status requirements through December 31, 2008. AR 14. Wells has the following severe combination of impairments: "mild degenerative disc disease of the lumbosacral spine, mild osteopenia and degenerative joint disease of the left knee, tricompartmental chondromalacia of the left knee, hyperlipidemia, hypertension, obesity, a history of gastroesophageal reflux disease, a history of mild diverticulitis and diverticulosis, asymptomatic bradycardia, and a history of minimal ethmoid sinus disease." AR 14-15 (citations omitted).

Wells had the residual functional capacity ("RFC") to perform a range of medium work. She could "lift fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday." AR 19. She "can occasionally climb ramps, stairs, ladders, ropes and scaffolds." *Id.* She was capable of performing her past relevant work as a practical nurse as it is generally performed. AR 23-24.

## C. Obesity

Wells contends the ALJ erred in failing adequately to consider the effects of her obesity and develop the record regarding her obesity. She argues "no treating or examining physician expressly considered the precise issue of how or

to what extent her obesity imposes functional limitations beyond what her knee and back impairments themselves impose." JS 6.

The ALJ reviewed Wells' medical records and found she had a severe combination of impairments which included obesity. AR 14, 17 (*citing* AR 166, 179, 203, 257, 343). He considered whether her obesity by itself or in combination with other impairments met or equaled the listings. AR 18. The ALJ found his RFC assessment "fully incorporates any credible limitations stemming from" obesity. AR 23. The ALJ noted Wells had not provided evidence of "any nexus between obesity and additional limitations." *Id.* Accordingly, the ALJ clearly and explicitly considered Wells' obesity and the effect it had on the severity of her impairments and RFC. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005). Wells' contention to the contrary is without merit.

Wells' argument that the ALJ erroneously failed to fully and fairly develop the record regarding her obesity also lacks merit. While Wells' treating doctors noted she was obese, they did not indicate it exacerbated her other impairments. AR 166, 203, 206, 246, 260, 262, 266, 271, 343, 382, 386, 399. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ and medical sources did not find that the record was ambiguous or inadequate. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (duty to develop record existed when ALJ relied on physician who expressed that more medical evidence was needed to state a diagnostic opinion). Accordingly, the ALJ was not required to further develop the record regarding obesity. *See Burch*, 400 F.3d at 682.

**D.     Treating Physicians**

Wells argues the ALJ improperly rejected the opinions of his treating physicians, Dr. Soholt and Dr. Saied.

///

4

The ALJ relied upon the assessments of state agency review physicians. AR 20. "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r, SSA*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, even assuming the treating physicians overstated Wells' limitations according to their own treating records (as the ALJ found), the state agency review physicians' opinions are inconsistent with the other medical records and cannot alone constitute substantial evidence to support the ALJ's RFC assessment. Therefore, this matter must be remanded.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) the length of the treatment relationship and frequency of examination;[1] (2) the nature and extent of the treatment relationship;[2] (3) the

---

[1] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if

5

1  amount of relevant evidence supporting the opinion and the quality of the
2  explanation provided; (4) the consistency with the record as a whole; and (5) the
3  specialty of the physician providing the opinion. *See Orn*, 495 F.3d at 631; 20
4  C.F.R. § 404.1527(d)(1)-(6). "When there is conflicting medical evidence, the
5  Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d
6  at 956–57 (citation and quotation marks omitted).

### 1. Dr. Soholt

On September 2, 2009, Dr. Soholt completed a form entitled, "Lower Extremities Impairment Questionnaire." AR 386-93. He treated Wells from April 21, 2006 to July 6, 2009. AR 386. He diagnosed chronic lower back pain, hypertension and obesity which caused severe lower back pain radiating to the left thigh and numbness in the left foot. AR 386, 388. He found limited range of motion of the lumbar spine; lumbar tenderness; muscle spasm at the lumbar spine and lower extremities; muscle weakness at the lumbar spine; abnormal gait; abnormal posture; and a positive straight leg raising test.[3] AR 386-87. He opined she could sit for up to 1 hour in an 8-hour day; stand/walk for up to 1 hour in an 8-hour day; would have to get up and move around every 15 minutes; could never lift or carry any weight; could not tolerate even low work stress; and would be absent from work more than 3 times a month. AR 389-92. Dr. Soholt attached a physical therapy report dated December 22, 2008. AR 390.

///

---

it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[2]"Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

[3] Treating records indicate Wells had decreased range of motion in her back and tenderness at her left lumbosacral area, and was unable to lay on her back to perform a straight leg raising test. AR 277-78. On May 15, 2008, she had a positive straight leg raising test and continued to have decreased range of motion and tenderness. AR 173. On June 3, 2008, she had limited range of motion, tenderness and a positive straight leg raising test. AR 171.

1	The ALJ found that Dr. Soholt's opinions were not entitled to substantial weight because they were not supported by his treating records and the check-off report was brief and conclusory.[4] AR 20-21.

The ALJ's reasons are supported by substantial evidence. Dr. Soholt attached only the initial report of Wells' first visit to physical therapy on December 22, 2008. AR 390, 394-97. At that point, Wells' goal was to be able to sit, stand and walk for 2 hours before the onset of pain. AR 249. She was able to sit and stand for 30 minutes, she experienced pain 100% of the time in the past 24 hours, her pain level after sitting for 2 hours was 10/10, her pain level with bending forward was 7/10, her slump test was positive, her sciatic nerve lower limb tension test was moderate, she had symptoms with straight leg raising at 50°, and various muscles had strengths of 2/5, 3/5, and 3/5. AR 251-52.

As the ALJ noted, Dr. Soholt did not describe any improvement of symptoms. AR 20-21. Dr. Soholt's opinion did not attach the physical therapy notes after the initial intake on December 22, 2008.[5] The ALJ reviewed those notes. AR 16. According to the physical therapy notes in the record dated a few weeks later on February 2, 2009, the percentage of time in pain over the past 24 hours decreased to 10 and 5 percent. Her pain level after sitting for 2 hours was 4/10, and her pain level with bending forward was 3/10. Her slump test was negative, and sciatic nerve lower limb tension test showed that she was "mildly symptomatic." She had no symptoms with straight leg raising at 90°, which was normal. The strength of various muscle groups had improved to 4-/5, 4/5, and

---

[4] The ALJ also noted Dr. Soholt did not refer Wells to an orthopedic evaluation or follow-up. Dr. Saied's progress notes dated June 2008 indicate an "ortho consult" is pending. AR 166. His November 4, 2008 letter recommended that Wells be referred to an orthopedic surgeon. AR 246.

[5] The ALJ rejected Dr. Soholt's opinions to the extent they were based on Wells' subjective allegations, which the ALJ discounted. AR 21. Wells does not challenge the ALJ's credibility finding. This reason is not sufficient by itself to discount Dr. Soholt's opinion, however, because the opinion was also based on independent clinical findings and Dr. Soholt's observations.

7

3+/5, respectively. AR 339. Her sitting and standing time improved to approximately 45-60 minutes. AR 333. Her walking time was 30 minutes. AR 333, 337. As of January 19, 2009, Wells reported a 50% reduction in her cane use. AR 327. As the ALJ noted, treatment notes dated January 2009 report that Wells indicated her back pain was getting better but she still had "some pain." AR 20, 257.

Accordingly, Dr. Soholt's opinion that Wells could sit for a total of 0-1 hour and stand for a total of 0-1 hours in an 8-hour workday is inconsistent with the treatment records. AR 389. The records indicate that she could sit and stand for 45-60 minutes before the onset of pain, and then would require a break before resuming (which Dr. Soholt estimated at 15 minutes, AR 389). Dr. Saied's assessment in November 2008 similarly stated that Wells was "unable to stand or sit for long periods of time." AR 246. Moreover, Dr. Soholt's opinion that Wells could never lift anything from 0-5 pounds is inconsistent with the treatment records. AR 390. According to Wells' intake questionnaire in physical therapy in December 2008, Wells indicated she could lift very light weights. AR 292. As the ALJ noted, on May 28, 2009, Wells reported that she had back pain since the previous Saturday. AR 16, 349. She was referred to physical therapy on June 5, 2009. AR 343. The physical therapy notes are not in the record.

The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Soholt's opinions. However, the state agency physicians' assessment that Wells is capable of medium work is also inconsistent with the medical record and cannot constitute substantial evidence supporting the ALJ's RFC assessment. This matter must be remanded for reassessment of Wells' RFC. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made).

///

### 2. **Dr. Saied**

Wells also argues that the ALJ improperly rejected the opinions of Dr. Saied. The ALJ did not accept Dr. Saied's opinions for the same reasons he articulated with respect to Dr. Soholt. AR 21. On November 4, 2008, Dr. Saied set forth Wells' impairments, medications, prognosis and treatment plan. AR 246. He opined that Wells was able to walk with the assistance of a cane and was unable to stand or sit for long period of time. *Id.* On February 19, 2010, Dr. Saied wrote a letter in which he discussed and adopted as his own all of the clinical findings, observations, diagnoses and opinions contained in Dr. Soholt's "Multiple Impairment Questionnaire." AR 386-93, 399-400. Accordingly, the ALJ provided specific and legitimate reasons for rejecting Dr. Saied's opinions.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

DATED: August 26, 2011

　　　　　　　　　　　　　　　　/s/ Alicia G. Rosenberg
　　　　　　　　　　　　　　　　ALICIA G. ROSENBERG
　　　　　　　　　　　　　　　　United States Magistrate Judge